**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

|                                        |   |                          |
|----------------------------------------|---|--------------------------|
|                                        | : |                          |
| **UNITED STATES OF AMERICA,**          | : |                          |
|                                        | : |                          |
|                                        | : |                          |
| **v.**                                 | : | **CRIMINAL ACTION NO.**  |
|                                        | : | **5:06-CR-13(HL)**       |
|                                        | : |                          |
| **ANDRICUS STEPHENS,**                 | : |                          |
|                                        | : |                          |
| **Defendant.**                         | : |                          |
|                                        | : |                          |
|                                        | : |                          |

## ORDER

Before the Court is Defendant's Motion to Dismiss Indictment (Doc. 86), Motion in Limine to Exclude Defendant's Prior Testimony (Doc. 100), and Motion in Limine for Admission of Government's Argument to the Jury in U.S. v. Fitzpatrick (Doc. 99). For the following reasons, Defendant's Motions are denied.

## I.      FACTS

On December 30, 2004, local law enforcement officials executed a search warrant at a residence located at 4024 Training School Road in Macon, Georgia. (Vol. I, Tr. p. 27). Defendant Jimmy Fitzpatrick was the only occupant of the residence at the time the search warrant was executed. (Vol. I, Tr. p. 31). Inside the residence, police found, among other things, a canvas jacket hanging in a bedroom closet that contained powder cocaine and crack cocaine in the interior pocket. (Vol. I, Tr. p. 35). Accordingly, on January 25, 2006,

Defendant Fitzpatrick was indicted for possession of cocaine base with intent to distribute and possession of cocaine with intent to distribute.[1]  (Doc. 1).

At Defendant Fitzpatrick's trial on these charges, the defense called Andricus Stephens as a witness to testify that the drugs belonged to Stephens, not Fitzpatrick.  (Vol. I, Tr. pp. 112-14).  The Government was aware that Stephens might try to take responsibility for the drugs because the Government knew that Stephens had signed an affidavit on January 14, 2005, in which he took full responsibility for the drugs.[2]  (Vol. I, Tr. pp. 114-15).  Thus, after Stephens was sworn as a witness but prior to giving testimony concerning his ownership of the drugs, the Government requested a side-bar conference.  (Vol. I, Tr. p. 114).  During the side-bar conference, the Government apprised the Court that Stephens was going to claim ownership of the drugs, and therefore, he needed to be advised of his Fifth Amendment rights.  (Vol. I, Tr. p. 114).  As a result, the Court appointed attorney Charles Cox Jr. to represent Stephens.  (Vol. II, Tr. p. 3).  Mr. Cox conferred with Stephens, informed him of his Fifth Amendment rights, and advised him to assert those rights.  (Vol. II, Tr. p. 6).  Stephens declined to exercise his Fifth Amendment rights and proceeded to testify.  (Vol. II, Tr. p. 7).  While on the stand, Stephens testified that he was living at 4024 Training School Road when the drugs were discovered there, that the drugs found at the residence were his, that he never showed the drugs to Fitzpatrick, and that he never told Fitzpatrick there were

[1]Fitzpatrick was also indicted for firearms violations, but the firearms violations are not relevant to Andricus Stephens.

[2]The affidavit was prepared by attorney William Noland, who represented Fitzpatrick on state charges involving the same conduct that is the basis for the federal drug charges.

drugs in the house.  (Vol I, Tr. p. 85; Vol. II, Tr. pp. 11-12).

After cross-examining Stephens, the Government called two rebuttal witnesses to counter Stephens's testimony.  First, the Government called Luzetta Stephens, Andricus Stephens's stepmother, who testified that Andricus Stephens was living with her in Jeffersonville, Georgia at the time the drugs were found at the residence on Training School Road in December 2004.  (Vol. II, Tr. p.  31).  Next, the Government called Rafiq Ahmad, an agent with the Bureau of Alcohol, Tobacco, and Firearms, who assisted the Government in its preparation of the case against Defendant Fitzpatrick.  (Vol. II, Tr. p. 33).  Agent Ahmad testified that he interviewed Stephens two times prior to trial concerning the facts asserted in Stephens's affidavit.  Agent Ahmad initially interviewed Stephens on July 18, 2006, at which time Stephens denied the truth of the assertions contained in the affidavit. (Vol. II, Tr. p. 34).  Specifically, Agent Ahmad testified that Stephens denied living at 4024 Training School Road and denied that the drugs found there belonged to him.  (Vol. II, Tr. p. 34).  Agent Ahmad next interviewed Stephens on August 30, 2006, and Agent Ahmad testified that Stephens's story had changed since the July 18 interview.  Stephens was now asserting that he did live at 4024 Training School Road at the time the drugs were found there and that the drugs belonged to him, not Fitzpatrick.  (Vol. II, Tr. pp. 37-38).

In its closing argument, the Government argued to the jury that Stephens was lying when he claimed ownership of the drugs.  The Government argued to the jury: "[I]t's not [Stephens's] room, it's not his jacket, and it's not his dope.  That's the bottom line.  This witness has come into court, and the Government will tell you, he's fabricated a story for Mr.

Fitzpatrick." (Vol. II, Tr. p. 67). The jury began deliberations on February 6, 2007, and on February 8, 2007, the Court declared a mistrial after the jury reported it was deadlocked. (Doc. 56). On March 15, 2007, the Government superseded the indictment and charged both Jimmy Fitzpatrick and Andricus Stephens with the same drug offenses that were originally charged only against Fitzpatrick. (Doc. 62).

## II.    DISCUSSION

### A.    MOTION TO DISMISS INDICTMENT

Defendant Stephens has filed a Motion to Dismiss Indictment (Doc. 86), arguing that his "due process rights will be violated if the Court allows the Government to move forward with the prosecution of [Stephens] based on a new theory or factual premise that is inconsistent with that presented in the previous trial of Jimmy Fitzpatrick." (Def.'s Mot. Dismiss Indictment p. 4). In United States v. Dickerson, 248 F.3d 1036 (11th Cir. 2001), the Eleventh Circuit addressed the inconsistent theories of prosecution argument. The Court in Dickerson noted that the due process concern underlying other cases addressing the inconsistent theories argument was "the concern that the Government would attempt to prosecute and convict multiple defendants for the same crime in the hopes that one of them is the true perpetrator of the crime." Id. at 1043-44 (citing Jacobs v. Scott, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of cert.); Thompson v. Calderon, 120 F.3d 1045, 1055 (9th Cir. 1997) (Fletcher, J., writing for en banc plurality), rev'd on other grounds, 523 U.S. 538 (1998); Drake v. Kemp, 762 F.2d 1449, 1470 (11th Cir. 1985) (Clark, J., concurring)).

In this case, nobody was convicted in the first trial because Fitzpatrick's jury deadlocked and the Court declared a mistrial. The Government then superseded the original indictment, charging both Fitzpatrick and Stephens with the drug crimes that were originally charged solely against Fitzpatrick. Now, the Government is pursuing a theory that both Stephens and Fitzpatrick jointly possessed the drugs. As a result, the due process concern implicated in other inconsistent theories cases is not implicated here because there is no possibility that multiple defendants will be convicted for the same crime based on factually contradictory theories.

Furthermore, in cases relied upon by Defendant Stephens, the courts have emphasized their concern about the unfairness of the prosecution arguing inconsistent theories at two separate trials. See Smith v. Groose, 205 F.3d 1045, 1051 (8th Cir. 2000) (stating that the prosecution's "use of factually contradictory theories constituted 'foul blows'"); Drake, 762 F.2d at 1479 (Clark, J., concurring) (noting that the prosecution's "flip flopping of theories of the offense was inherently unfair"). Here, after Stephens was read his Fifth Amendment rights and was informed of the potential consequences of his testimony, he proceeded to testify under oath that the drugs belonged to him. The Government indicted Defendant Stephens based on a different factual theory only after Stephens came into court and claimed ownership of the drugs. This Court finds it hard to believe that it is unfair to Defendant Stephens for the Government to change its theory of prosecution when the prosecution's theory changed because of an in-court confession provided by Defendant Stephens.

Defendant Stephens, however, contends that his in-court testimony cannot serve as

a basis for the Government to change its theory of prosecution because prior to Fitzpatrick's trial the Government had knowledge of the affidavit Stephens signed in which he claimed ownership of the drugs. But the Government's prior knowledge of the affidavit does not change the Court's conclusion that it is not unfair for the Government to change its theory of prosecution based on Stephens's in-court testimony. Though the Government had knowledge of Stephens's affidavit, the Government had no way of knowing for sure whether Stephens would testify and claim ownership of the drugs. Based on inconsistent statements that Stephens provided to Agent Ahmad concerning the truthfulness of the affidavit, there was clearly a possibility that Stephens would testify that the drugs did not belong to him. Also, Stephens could have asserted his Fifth Amendment rights and not testified at all. For these reasons, Defendant Stephens's Motion to Dismiss Indictment is denied.

### B. MOTION TO EXCLUDE DEFENDANT'S PRIOR TESTIMONY

Defendant Stephens has filed a Motion in Limine to Exclude Defendant's Prior Testimony (Doc. 100) on the ground that the Government knows that Defendant Stephens's prior testimony from the Fitzpatrick trial was perjured. Specifically, Defendant Stephens asserts that his testimony must be excluded unless the Government comes forward with newly learned evidence to justify why it now believes in the truthfulness of testimony that it once believed was false. As Defendant Stephens correctly asserts, the Due Process Clause prohibits prosecutors from introducing evidence that it knows or believes is false or perjured. See Napue v. Illinois, 360 U.S. 264 (1959); U.S. v. Sutherland, 656 F.2d 1181, 1203 (5th Cir.

Sep. 1981).[3] Defendant Stephens, however, has failed to show that the Government knows or believes that his testimony in the Fitzpatrick trial was perjured.

Though the Government did not believe Defendant Stephen's testimony during the Fitzpatrick trial, there is nothing to indicate that it does not now believe in the truthfulness of Stephens's testimony. During the time the Government was preparing for the Fitzpatrick trial, the only information the Government had from Defendant Stephens were a bare bones affidavit from Stephens claiming ownership of the drugs and inconsistent statements from Stephens concerning the truthfulness of his assertions in the affidavit. Defendant Stephens could have testified the drugs were not his or he could have asserted his Fifth Amendment rights and not testified at all. Thus, as previously stated in the Court's discussion of the Motion to Dismiss Indictment, the Government could not know for sure whether Stephens was going to testify to owning the drugs. When Defendant Stephens came into court, he testified under oath, after being informed of his Fifth Amendment rights and the potential consequences of his testimony, that the drugs were his. It is not surprising that the Government did not suddenly change course in the middle of Fitzpatrick's trial by incorporating Defendant Stephens's testimony into its theory of the case. After Fitzpatrick's trial ended in a mistrial, the Government had the opportunity to re-evaluate the facts, including Stephens's in-court testimony, which was unavailable to the Government prior to

_____

[3]Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Fitzpatrick's trial. It was then that the Government determined that Defendant Stephens was telling the truth. As a result, Defendant Stephens has failed to demonstrate that the Government knows or believes that his prior testimony in the Fitzpatrick trial was perjured. Defendant's Motion to Exclude Prior Testimony is therefore denied.

### C.   MOTION TO INTRODUCE GOVERNMENT'S ARGUMENT TO THE JURY

Last, Defendant Stephens has filed a Motion in Limine for Admission of the Government's Argument to the Jury from the Fitzpatrick trial (Doc. 99). Defendant Stephens asserts that the Government's argument to the jury is admissible as an admission by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2). Under certain circumstances, an attorney's statements in a prior trial are admissible in a subsequent trial as an admission by a party-opponent. See U.S. v. DeLoach, 34 F.3d 1001, 1005 (11th Cir. 1994); United States v. Salerno, 937 F.2d 797, 811-12 (2d Cir. 1991), rev'd on other grounds, 505 U.S. 317 (1992); United States v. McKeon, 738 F.2d 26, 28-34 (2d Cir. 1984). In DeLoach the Eleventh Circuit applied Second Circuit precedent to address a defendant's contention that statements from the prosecutor's closing argument in a prior, related trial were admissible as admissions in the defendant's trial. DeLoach, 34 F.3d at 1005 (citing McKeon, 738 F.2d at 27-34; Salerno, 937 F.2d at 811-12). The Court in DeLoach noted that the Second Circuit in McKeon held that a defense attorney's opening statements in a prior trial are admissible in a subsequent trial if 1) the statements are factual assertions equivalent to testimonial evidence, and 2) the statements from the prior trial are contradictory to the attorney's

statements in the current trial.[4] <u>DeLoach</u>, 34 F.3d at 1005.  The Second Circuit in <u>McKeon</u>, however, held that there are three requirements.  Perhaps because this third and final requirement was inapplicable to the case before the Court in <u>DeLoach</u>, the Eleventh Circuit failed to mention it.  This third requirement is that the attorney's prior inconsistent statements are admissible in a subsequent trial only if an innocent explanation for the inconsistency does not exist.  <u>McKeon</u>, 738 F.2d at 33.

In this case, the Government's closing argument from the Fitzpatrick trial is inadmissible in this trial because an innocent explanation for the inconsistency exists.  As previously stated in the Court's Order, the Government changed positions primarily because of the in-court confession of Defendant Stephens, which it had the opportunity to evaluate, after Fitzpatrick's trial ended.  Thus, the Government's closing argument is inadmissible in this trial as an admission by a party-opponent because it does not meet the requirements set forth in <u>McKeon</u>.  Defendant's Motion in Limine for Admission of Goverment's Argument to the Jury in <u>U.S. v. Fitzpatrick</u> is therefore denied.

## III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Indictment (Doc. 86), Motion in Limine to Exclude Defendant's Prior Testimony (Doc. 100), and Motion in Limine for Admission of Government's Argument to the Jury in <u>U.S. v. Fitzpatrick</u> (Doc. 99) are denied.

---

[4]In <u>Salerno</u> the Second Circuit stated in dicta that <u>McKeon</u>'s holding applies to closing arguments by a prosecutor.  <u>Salerno</u>, 937 F.2d at 811.

**SO ORDERED**, this the 12th day of October, 2007.

s/Hugh Lawson
**HUGH LAWSON, JUDGE**

dhc